

# Exhibit C
# Separator

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAYDN ZEIS, Administrator of the Estate of Jordn Luke Miller, Deceased, | ) ) ) | CASE NO: 5:16cv2331 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | RESPONSES TO DEFENDANT SPRINGFIELD TOWNSHIP'S |
| SPRINGFIELD TOWNSHIP, OHIO, et al., | ) ) | WRITTEN DEPOSITION QUESTIONS ADDRESSED TO LISA KOHLER, M.D. |
| Defendants. | ) | |

1. Please state your business address, any medical specialty or board certification you have in medicine, and the date you were licensed as a physician in the state of Ohio.

   **The address is Summit County Medical Examiner, 85 North Summit Street, Akron, OH 44308 and I was licensed as a physician by the State of Ohio in 1998.**

2. Please set forth your experience as a medical examiner for Summit County.

   **I was hired as Deputy Medical Examiner in November 1998; promoted to Chief Deputy Medical Examiner in June 2000; promoted to Acting Chief Medical Examiner in January 2001; and approved as Chief Medical Examiner in April 2001.**

3. Attached as Exhibit "A" is a copy of your medical report involving the death of Jordn Miller who died on September 10, 2015; is this a true and accurate copy of your final report?

   **Yes.**

4. Did you make a determination based upon reasonable medical certainty, as to the cause of death?

   **Yes.**

5. What was in your opinion, the cause of the death of Jordn Miller?

Exhibit C

The Cause of Death was Hypoxic-ischemic encephalopathy (brain injury from lack of oxygen) due to cardiac arrest with prolonged resuscitation and due to recent drug intoxication and unspecified psychiatric illness exacerbation. Recent methamphetamine use was a contributory condition.

6. Did you make a determination of other causative factors regarding the following, and if so, to what extent were any of these situations causative factors?

    a. Positional asphyxia

Positional or restraint asphyxia contribution was evaluated. Mr. Miller was reportedly restrained in a prone position by officers; however, there were no deep muscular bruises identified upon reflecting the skin of the back and extremities. Mr. Miller is slightly overweight, but not obese. Although the prone position can be associated with difficulty oxygenating patients according to anaesthesia literature, it is unclear whether the position of Mr. Miller during the time of restraint contributed to his demise.

    b. Excessive blunt force

Although Mr. Miller had multiple blunt force injuries, none of these were life threatening and were not indicative of excessive blunt force.

    c. Administration of a taser

Taser electronic control device contribution was evaluated. Two probe implantation sites were identified at autopsy on the right postero-lateral back with an inter-probe distance of two (2) inches. No anatomic evidence of the drive-stun deployment was detected. The location of the probe deployment and the distance between the probe implantation sites make the likelihood of cardiac capture very low and as such the administration of a taser was not a likely contribution to Mr. Miller's demise.

    d. Illicit or other drug intake

Drug intoxication contribution was evaluated. Mr. Miller was reportedly using illicit drugs in the days preceding his collapse and was reported to have an unspecified psychiatric illness. Toxicology testing showed methamphetamine in his urine this was consistent with recent usage. Apparent therapeutic levels of methadone were found in his blood. No evidence of inhaled solvents (huffing) was identified. Toxicology testing was limited by the size of the admission sample available and testing for an extended panel of atypical intoxicating illicit drugs (synthetic cannabinoids and bath salts) could not be completed. A query of OARRS showed no prescriptions for methadone which is consistent with methadone being dispensed from a methadone clinic. The level of methadone in the toxicology testing fell into the grey zone between maintenance doses and toxicity levels. As such, illicit or other drug intake cannot be ruled out as a contribution to Mr. Miller's demise, but it cannot be confirmed to have contributed to Mr. Miller's demise either.

    e.    Factors unknown based upon the toxicology sample or other facts available

**I cannot evaluate unknown factors.**

7. Do you have an opinion based upon a reasonable medical certainty whether the plaintiff's death was caused by positional asphyxia?

**Please see the response to Question Number 6(a).**

8. Do you have an opinion based upon reasonable medical certainty as to whether or not the decedent's death was caused as a result of the use of the taser on September 8, 2015?

**Please see the response to Question Number 6(c).**

9. Do you have an opinion based upon reasonable medical certainty as to whether or not the decedent's death was caused by his ingestion of certain drugs, either therapeutic doses or illicit drugs as determined by the toxicology report?

**Please see the response to Question Number 6(d).**

3

10. Do you have an opinion, based upon reasonable medical certainty that the causes of the decedent's death are essentially unknown?

**The Cause of Death was Hypoxic-ischemic encephalopathy (brain injury from lack of oxygen) due to cardiac arrest with prolonged resuscitation and due to recent drug intoxication and unspecified psychiatric illness exacerbation. Recent methamphetamine use was a contributory condition.**

Respectfully submitted:

*Robert C. Higham*
Robert C. Higham (0077676)
County of Summit
Dept. of Law, Insurance and Risk Management
175 South Main Street
Akron, Ohio 44308
Telephone: (330) 643-8428
Facsimile: (330) 643-2507
E-Mail: rhigham@summitoh.net

4

## PROOF OF SERVICE

A copy of the foregoing responses were sent by electronic and ordinary U.S. mail this 14th day of July, 2017, to:

Mel L. Lute, Jr., Esq.
Baker, Dublikar, Beck, Wiley & Matthews
400 South Main Street
North Canton, OH 44720

and

Michael A. Hill, Esq.
Spangenberg Shibley & Liber LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114

*Robert C. Higham*
Robert C. Higham (0077676)

## MEDICAL EXAMINER, COUNTY OF SUMMIT
85 N. Summit Street  Akron, OH  44308-1948

### REPORT OF INVESTIGATION
Chapter 313 Ohio Revised Code

NAME: Jordn Lucas Miller                     CASE No: 55029

ADDRESS: 909 Milo White Drive               DATE EXAMINATION: 09/11/2015
         Springfield Twp., Ohio 44312

OFFICIAL DATE DEATH: 09/10/2015             TIME: 21:40 Hours

PRONOUNCED BY: Dr. Zaugg                    PLACE-DEATH: Akron City Hospital

MARITAL STATUS: Single

AGE: 24 Years     RACE: White               SEX: Male     AUTOPSY: Yes

NEXT OF KIN: Aunt: Beth Zeis                ADDRESS: 1147 W. Areba Avenue
                                                     Hershey, PA  17033

REPORT BY INVESTIGATOR:  David Rosa

Jordn L. Miller was a 24-year-old male with an undocumented medical history, who died in the hospital two days after admission due to cardiac arrest after being tazed by police officers.

Summa Akron City Hospital medical records indicate that Mr. Miller had a medical history of substance abuse and was on methadone.

The Springfield Police Department Incident Report indicates that on 09/08/2015 at 1519 hours, they received a call from a family member of Jordn L. Miller, reporting that Jordn was acting strange and running around naked outside. Officers responded to the area of 909 Milo White Drive. While enroute responding officer's were updated and advised by dispatch that Jordn had gotten dressed and was reportedly trying to steal a vehicle in the 1000 block of Abington Drive. Responding Officers found Jordn seated inside a vehicle corralled by bystanders. Officers reported that Jordn was combative and was subsequently tazed twice after biting an officer. Jordn was handcuffed and placed prone on the ground when he suddenly became unresponsive. Officers then requested EMS to the scene.

The Springfield Fire Department EMS Run Report indicates that they received a call on 09/08/2015 at 1525 hours, to respond to 1019 Abington Drive. Responding paramedics found Jordn L. Miller on the ground handcuffed. Jordn was pulseless and apneic. Immediate CPR was initiated and continued enroute to Summa Akron City Hospital.

Summa Akron City Hospital medical records indicate Jordn L. Miller presented to the emergency department with resuscitative efforts in progress being performed by the squad on 09/08/2015 at 1552 hours. ACLS protocol was performed in the emergency department with return of spontaneous respiration. He was admitted to the ICU where repeated CT scans confirmed significant cerebral edema and tonsillar herniation. He remained with a very poor prognosis throughout his course of treatment. His condition continued to deteriorate and was subsequently made DNR/CCO by his family due to his very poor prognosis. Jordn L. Miller was terminally extubated on 09/10/2015. Jordn L. Miller was later pronounced dead at 2140 hours on 09/10/15, by Dr. Zaugg, of Akron City Hospital.

(Continued)

MEDICAL EXAMINER'S REPORT OF INVESTIGATION

Page: Two
Case #: 55029
Miller, Jordn Lucas

The Summit County Medical Examiner was notified of the death of Jordn L. Miller on 09/10/2015 at 2310 by Dr. Stephanie Zaugg of Summa Akron City Hospital. The deceased was later transported to the Summit County Medical Examiner's Laboratory where an autopsy examination was performed by Lisa J. Kohler, M.D., Chief Medical Examiner. The body of the deceased was later released to the Adams Mason Memorial Home at the request of the family of the deceased.

_____ Investigator

After an examination of all available evidence, I do find that the deceased came to the death by:

**Cause of Death:** Hypoxic-ischemic encephalopathy.
Due to: Cardiac arrest with prolonged resuscitation.
Due to: Recent drug intoxication and unspecified psychiatric illness exacerbation.

**Contributory Conditions:** Recent methamphetamine use.

**Manner of Death:** UNDETERMINED: Witnessed cardiac arrest following prone restraint and illicit drug use; In custody death.

I hereby certify the foregoing to be a true and correct report of said examination to the best of my knowledge and belief of said body.

_____
Chief Medical Examiner  03/05/2016

I.  Hypoxic ischemic encephalopathy:
    A. Cerebral edema with:
       1. Tonsillar herniation
       2. Flattened anterior brainstem
    B. Ischemic injury to caudate nuclei and basal ganglia

II. Cardiorespiratory arrest while in police custody with resuscitation:
    A. Left ventricular subendocardial ischemia
    B. Clinical echocardiogram showing "moderate to severe global left ventricular dysfunction" and ejection fraction of 32%
    C. Bilateral pleural effusions and ascites secondary to fluid resuscitation
    D. Post-resuscitation hospital survival, days

III. Recent drug intoxication:
    A. Admission blood (09/08/2015 at 1648 hours) positive for methadone
    B. Urine sample positive for methamphetamine, methadone and metabolites
    C. Reported history of "bizarre" behavior by law enforcement and lay witnesses

IV. History of taser deployment with:
    A. Probe deployment with a 2 inch spread on the right back
    B. Reported drive stundeployment to right thigh (no anatomic evidence)

V.  History of prone restraint:
    A. Handcuff abrasions, right wrist.
    B. No deep contusions to back

VI. Accessory diagnoses
    A. Multiple superficial abrasions of face and lower extremities.
    B. Multi organ system failure, clinical.
    C. Clinical documentation of elevated body temperature (103 degrees F) on admission
    D. Reported prior diagnoses of psychiatric illness (OCD, ADD, Bipolar) during childhood, not currently under the care of a physician

**OPINION:**
Jordn Miller (55029) died from hypoxic ischemic encephalopathy (brain injury from lack of oxygen) two days after being resuscitated from a cardiorespiratory arrest while in police custody.

The exact cause of the cardiorespiratory arrest (stoppage of the heart and lungs) is unclear. The initial cardiac arrest occurred in police custody. Mr. Miller went "unresponsive" while being restrained in a prone position after police responded to a report of Mr. Miller exhibiting "bizarre" behaviors and being combative. Several factors have been evaluated during the course of this investigation to determine the likelihood of contributory effect.

Positional or restraint asphyxia contribution was evaluated. Mr. Miller was reportedly restrained in a prone position with officers restraining his arms and legs and one officer with a foot on his shoulder blade; however, there were no deep muscular bruises identified upon reflecting the skin of the back and extremities. Mr. Miller is slightly overweight, but is not obese. Although the prone position can be associated with difficulty oxygenating patients according to the anaesthesia literature, it is unclear whether the position of Mr. Miller during the time of restraint contributed to his demise.

Taser electronic control device contribution was evaluated. Officers report deploying their taser electroconductive weapon in probe mode supplemented by drive stun deployment. Two probe implantation sites were identified at autopsy on the right postero-lateral back with an inter-probe distance of 2 inches. No anatomic evidence of the drive-stun deployment was detected. The location of the probe deployment and the distance between the probe implantation sites make the likelihood of cardiac capture very low. Springfield Police "Ohio Incident Based Reporting System Investigator Notes" indicates that Mr. Miller continued to struggle for "several minutes" after the Taser deployment attempts.

Drug intoxication contribution was evaluated. Mr. Miller was reportedly using illicit drugs in the days preceding his collapse and is reported to have an unspecified psychiatric illness. Toxicology testing showed methamphetamine in his urine that is consistent with recent usage and apparent therapeutic levels of methadone in his blood. No evidence of inhaled solvents (huffing) were identified. Toxicology testing was limited by the size of the admission sample available and testing for an extended panel of atypical intoxicating illicit drugs (synthetic cannabinoids and bath salts) could not be completed. A query of OARRS showed no prescriptions for methadone which is consistent with methadone being dispensed from a methadone clinic.

The contribution of psychiatric illness was evaluated. Mr. Miller did not have a primary care physician. The exact nature of his psychiatric illness is unknown, although his mother, Wendy Tomblin, reported during her 911 call that Mr. Miller had diagnoses of bipolar, OCD [obsessive compulsive disorder] and ADD [attention deficit disorder] and was experiencing a "psychotic break". She described him as "talking out of his head" and not making sense. Individuals with certain psychiatric diagnoses are at greater risk for sudden cardiac death than age matched control patients. Mr. Miller was noted to have a prolonged QT interval by EKG during the post resuscitation hospitalization. It is unknown if the prolonged QT interval existed prior to the cardiac arrest or exists as a consequence of resuscitative efforts.

The Manner of Death was ruled Undetermined to reflect the uncertainty of the contribution of restraint asphyxia, illicit drug use and his unspecified mental illness in causing his death.