UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| Haydn Zeis, Administrator of ) <br> The Estate of Jordn Miller ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> Springfield Township, Ohio, et al. ) <br> ) <br> Defendants. ) | CASE NO. 5:16CV2331 <br><br> JUDGE JOHN R. ADAMS <br><br><br> **MEMORANDUM OF OPINION** |

This matter comes before the Court on a motion for summary judgment filed by Defendants Springfield Township, Ohio, John Smith, Robert Scherer, Joe Holsopple, and Denise More ("Defendants"). Doc. 16. Also pending before the Court is a partial motion for summary judgment filed by Plaintiff Haydn Zeis. For the reasons that follow, both motions are DENIED. [1]

**I. Facts & Procedure**

Shortly after 3 p.m. on September 8, 2015, the Springfield Township Police Department received a call regarding a "mental health case." The call reported that an individual later

---

[1] Given this denial, Zeis's motion to strike is DENIED AS MOOT. Doc. 44.

identified as Jordn Miller was "in the throes of a mental health crisis." Officer Robert Scherer and Officer Joseph Holsopple were the first to respond. Both officers arrived on scene at roughly 3:21 p.m. Upon arriving, the officers learned that Miller had entered the Jeep of another neighborhood resident and was refusing to leave it. The officers approached the Jeep and ordered Miller to exit. Miller did not voluntarily exit the Jeep.

The parties' views of what transpired next are decidedly different. The officers contend that they attempted to remove Miller from the Jeep and Miller forcibly resisted. The officers contend that both were required to exert force on Miller to get him to the ground and to get a single handcuff on him. Officer Scherer asserts that despite both officers attempting to subdue Miller, Miller raised up, turned his head, and bit Scherer's calf during the altercation. With Holsopple's assistance, Scherer then used his taser on Miller's back to attempt to finish placing Miller in handcuffs. The use of the taser was effective in that allowed Miller to be handcuffed. At 3:24 p.m., three minutes after arriving on scene, Scherer called for an ambulance and advised that he had deployed his taser.

According to the officers, despite being handcuffed, Miller continue to flail and kick his legs. Sergeant Denise Moore arrived on scene at 3:25:28 and claims to have observed Moore still flailing and attempting to bite the officers. Moore also observed Scherer deploy his taser a second time in the hopes of protecting Miller from harming himself. Scherer claims that this second use of the taser had no effect on Miller. Observing this, Moore approached Miller and put her foot on Miller's shoulder to help keep him controlled. Shortly thereafter, Miller became compliant.

According to Moore, she then began asking Miller if he was "okay." When Miller did not respond, Moore claims that officers rolled Miller onto his side. Moore also requested that EMS "step it up" at 3:26:54, roughly 90 seconds after her arrival on scene. Scherer asserts that he check

Miller's pulse once he was rolled onto his side and that it was fast and strong. Scherer asserts that he did not begin to lose Miller's pulse until EMS paramedics had started up the driveway to Miller's location. Unfortunately, Miller never regained consciousness and passed away following the interaction with the officers.

Zeis presents a markedly different view of the events that transpired once officers encountered Miller. According to a neighbor that alleges to have witnessed the encounter, "the officers threw Jordn face first onto the gravel driveway" when they removed him from the Jeep. Doc. 36-16 at 4. This neighbor, Rachel Portman, asserts that "one of the officers simultaneously landed on top of Jordn's body as Jordn's face and stomach hit the ground." Doc. 37-16 at 4. Portman also asserts that Miller remained on his stomach in a face-down position for the entirety of the incident until EMS rolled him onto his back. Portman also contends that while Miller was face down, both officers pressed their hands and knees into his back. Portman also asserts that Miller's "head and shoulders were not rising off the ground" and that his "legs were not kicking up and down." Doc. 37-16 at 5. Ostensibly, Portman asserts that Miller became compliant almost immediately after being forcibly removed from the Jeep.

As noted above, both parties have sought summary judgment on Zeis' excessive force claim. Defendants have also sought summary judgment on the remaining claims in the complaint. The Court now reviews the parties' arguments.

## II. Legal Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate

to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

### III. Law and Analysis

A review of the facts set forth above reveals the parties' divergent views on the facts. In an attempt to evade the inevitable denial of their motion for summary judgment based upon that divergent evidence, Defendants urge this Court to ignore Portman's declaration because it is

"blatantly contradicted by the evidence in the record." Doc. 43 at 2. In support of that position, Defendants detail all of the witnesses that give a different account of the interaction between Miller and the officers. Defendants also assert that the medical examiner found "no deep muscular bruises" on Miller's back during the autopsy. Based upon those assertions, Defendants assert that Portman's declaration is implausible.

Defendants, however, can offer no legal support for ignoring Portman's declaration. Unlike the matter cited by Defendants, *France v. Lucas*, 836 F.3d 612 (6th Cir. 2016), Portman's declaration cannot be categorized as a sham affidavit. Moreover, her declaration does not contradict her own prior testimony. Defendants may be correct that there is an overwhelming amount of evidence that contradicts Portman's memory of the events. However, none of that evidence *precludes* a conclusion that Portman's version is accurate. For example, a lack of bruising on Miller's back does not preclude a finding that force was exerted on his back while he was face down. Further, simply because a witness at the same home as Portman has a dramatically different account of the events does not necessitate a finding that Portman's account is implausible. Summary judgment is not a stage of the proceedings during which this Court can weigh the credibility of the evidence. Instead, the Court must view the evidence in a light most favorable to Zeis. In so doing, it is clear that accepting Portman's account of events precludes summary judgment. If Miller became compliant upon being forced to the ground, as alleged by Portman, then there can be no question that officers violated a clearly established right when they tased him multiple times and held him facedown for multiple minutes with pressure on his back.

The Court reiterates that at this stage of the proceedings, the Court makes no finding on the credibility of Zeis's evidence. Instead, the Court accepts the evidence in a light most favorable to Zeis. As such, summary judgment cannot be entered. Moreover, given that the Court is denying

summary judgment based upon a factual dispute, it is the Court's hope that this matter will proceed forward to trial expeditiously.

For the same reasons stated above, Zeis's motion for summary judgment must be denied. While Portman's declaration portrays reckless and indifferent behavior, the testimony of the officers does not reveal such behavior. Instead, the officers recount using the least amount of force necessary to subdue Miller and report being acutely aware of the dangers associated with placing him face down on the ground. Given the widely divergent view of the facts surrounding Miller's encounter with the officers, summary judgment is not appropriate herein.

## IV. Conclusion

The parties' motions for summary judgment are DENIED. A telephone conference is hereby scheduled for April 5, 2018 at 10:00 a.m. Counsel only must participate in the conference. Plaintiff shall initiate the call to the Court.

       IT IS SO ORDERED.

Date: March 27, 2018                                                                 */s/ John R Adams*
                                                                                            JOHN R. ADAMS
                                                                                            U.S. DISTRICT JUDGE